First case of the morning, call 210-156, Robert Krasinecz, DBA, RK Enterprises v. Joseph Duffy, National City Mortgage. On behalf of the appellant, Mr. Nicholas P. Ibarroni. On behalf of Joseph Duffy, Mr. Wayne Worley. On behalf of National City Mortgage Company, Mr. Louis R. Schroeder. I understand the appellees will be sharing their time. Is that correct? Yes, sir. Right. You may proceed. Good morning. May it please the court, I represent the plaintiff and appellant in this case, the percentage. And I think we have a case that on the surface can be a very simple case. I think the first issue is whether the trial judge improperly permitted an affirmative defense to be asserted on the opening argument. If that's the case, and that affirmative defense was failure to comply with the sworn statement, contractor statement of the requirements of the Mechanics Lien Act. If that's the case, and it shouldn't have been considered because it's an affirmative matter that should have been pled, it does say, you know, okay, you did everything for the lien, obsessively, but hey, you didn't do this, and therefore the lien is voided. You can't bring it up in the middle of the opening statement. Significantly, it was something which I will go back on that was not brought up by the contractor, Mr. Duffy. So, you know, I'm now going to address, I think that's the way the case should be decided. It should be reversed and remanded based on it was improperly decided. If, you know, I'm wrong on that, I think this case gives this court an opportunity to really make a statement on the Mechanics Lien Act. I am not or have not been anywhere near knowledgeable on it until I started researching this case. And it's a difficult, the way it is, it's a difficult act because what I see is a number of cases where people are trying to beat contractors out of getting paid. I mean, that's what it is. There's work done, and they're not paid. No, but since you said you could bring it down to a pretty simple equation, what do you believe the intent is behind the Mechanics? I think the intent is what the Supreme Court said in Weatheright v. The University of St. Francis, that it's there to protect the lien holder, the contractors and subcontractors who perform work. I think that's consistent with what this court decided in National City, in which it compared a Mechanics lien case to an action in equity. I think, obviously, the law in this circuit and throughout, in this district and throughout the state is that it takes a request for a Mechanics, for a sworn statement, to trigger the responsibility to get one. Is this case primarily a procedural problem relative to whether or not a sworn statement was given? Right. One person saying yes, one person saying no, no sworn statement in the record. Right. Well, one of the things is if we look at, and I think one of the keys to this case is the second affirmative defense, pled to the initial pleading in which Mr. Duffy said he was overcharged. Here, we don't get, unlike Ambrose, Deerfield Electric and those cases, we don't have somebody that said, I asked for a sworn statement and didn't get one. What was said was I wanted to see the bills, the checks and what was paid. If we're going to have a rule of law that says something other than saying I want what the statute requires, I think that request has to be unequivocal. If, and what seems to me the request was, I want to see what you're charging me because this was a contract for construction costs plus a reasonable fee. But the trial court interpreted that sua sponte to mean he's asking for a sworn contract. And I think, you know, when you have a statement that could be, you know, if somebody's asking for a sworn statement, they're doing it for the reason of withholding money to pay, if necessary, subcontractors. If somebody's asking for documents because they think they're overcharged, that has nothing to do with the sworn statement. And I think if somebody is asking for something that's going to trigger a procedural requirement that has dire consequences if you don't fulfill it, I think that there has to be an unequivocal statement by that person. I think if you sit here and say, is it reasonable that Mr. Duffy was asking for a sworn statement? Is it reasonable he thought he was being overcharged and wanted to check the bills to see that the contractor wasn't taking, was doing more than a reasonable fee, then it can't trigger the statute. I think, you know, you can't let a contractor guess. So I think that is something that this court could address because otherwise we're going to be down the slope. You know, what if somebody says, hey, how much did you pay for the copper pipe? And what did you pay the concrete man? Is that going to come back a year later to say, well, I was really asking for a sworn statement when I asked for that? Well, say there's a bank involved. If there's a bank involved, there's a sworn statement filed with the bank. Bank's going to demand a sworn statement. And then before the bank makes any payout, you're going to produce a waiver for that subcontractor. Correct. Or any work that the contractor does. Correct. And here, you know, the bank had made the payments. Mr. Kucinich said he gave a sworn statement. It's on the record. But the one thing we know is that there are no subcontractors here. This is three years out. There's nobody making a claim. The other problem I have with the trial court is that if you're going to say, okay, I'll say that this person made what I'm going to consider a constructive request for a sworn statement and say that you could file a sworn statement at any time and you would have won. At the trial, Mr. Duffy said, I think it's Exhibit 4, which is in the record, are all of the things that Mr. Kucinich gave him. Mr. Kucinich was examined under oath on it. It was done with the court report. That's a sworn statement. I think if you're going to say on one hand, this is a constructive request, I don't think you can say I'm going to take a constructive request and then a literal interpretation here. I think, you know, at National City, this is an equitable proceeding. If I'm going to consider this a request, then I have to consider this sworn testimony under oath with a court reporter as complying with the statute. I think that's where we are with the case. I think that there's been some confusion. What is interesting to me is if you go back to the first case that started all this, Deerfield Electric, and if you read that case, the next two cases really don't follow that, Ambrose and Malaysia, because in Deerfield Electric, what happens is they don't give the statement that's asked for. It's unapprovable. It was requested and it wasn't. What's interesting is that on the rehearing, the court said, by the way, we want to make sure that even though we're denying the mechanics lien, and this is the two paragraphs at the end of the opinion, we want to make sure that the contractor gets paid. He's entitled for his work. Somehow, one part of Deerfield Electric about the mechanics lien gets interpreted in both Ambrose and Malaysia, but they forget about the bottom portion where they say that doesn't stop the contractor from getting paid. Here we have everything that happened, no lien, no payment, no unjust enrichment. I mean, it was just you lose because you didn't give a sworn statement, so whatever you did is gone. And this is not a penalty statute. It doesn't say we play the game and people that do work don't get paid. I think always the contractor gets paid. The question is whether they have a lien and whether they can exercise the lien. If they're providing services, it's here. And I think it's important in this case that we're not dealing with Mr. Blanding's building a stream house. This isn't some couple doing this. This is somebody that's out there building and has built before that knows how the game is played. So it's not some poor consumer that comes out and tries to be their own general contractor or negotiate their own contract. That's, I think, the case in a nutshell. If there's any questions, any other questions, I'd be happy to answer on any of the other issues. I think we're only here on our appeal, and that's why. You had filed a motion to file a supplement of authority. Can you talk a little bit about that? Just about the fact that when we look at these cases, we've seen that this district has said that, you know, we're not going to penalize people for not a procedural claim. I mean, people have tried not to get a pamphlet. If you're in the home rebuilding, I didn't get a pamphlet, therefore I'm not going to pay. And this court says, no, you know, that doesn't damage you. I mean, if you can show that damage, fine, but we're not going to invalidate a lien over that. And we've seen that consistently in Wyandotte homes. You know, it's really hard, because if you look at the Supreme Court cases, the Supreme Court has been pretty solid all the way around that this is a statute that's really there to protect the contractor, not to be used against them. And how it got sort of turned for a 15-year period, and I think that's because of just selective reading of cases. I think if you go back to this district's cases, back to Jefferson Electric, you come to this conclusion. And I don't think you have to really distinguish the cases on a lot of interesting issues. Are you saying that if the owner requests a sworn statement, the builder refuses to provide a sworn statement, that that refusal does not eliminate the builder's right to pursue a mechanical lien? No, I think it does. I think his mechanical lien is gone. I don't think it initiates a contract or an unjust enrichment. I think it's clear. So you're saying it does initiate the contract? Yes, that's what they say. I say no. I mean, it's clear that if it's asked for, you have to provide it. But it's also clear if it isn't asked for, it doesn't mean anything, which is the reason why the spring debt and opening argument is a little late to be saying that, because you'd want to do some discovery on this if that's what you're told. You mentioned that to spring debt and opening argument, you had no forewarning that that was coming? No. Mr. Duffy never raised it. He never even raised an open argument, the opening argument. The person that raised it, the individual that raised it, was the bank. And that's the problem. As you can go back, as you know, contractors and owners are talking all the time. You can go back almost in any conversation and try to construe that. And that's why I'm saying if you're going to have something that isn't a request under the statute, it has to be words that are unequivocal and show that that was the intent. Not an intent to see if it's too much money that I'm being charged. Not an intent to see if this guy is making a secret profit. Not to see if the builder is buying too many bricks and having part of them dumped at another location. But the reason for it is solely a sworn statement. I think it has to be unequivocal because the penalty is so drastic. Thank you very much. Thank you. Good morning, Counsel. Thank you, Counsel. Good morning, Justices. Wynn Wooley on behalf of Joe Duffy. My arguments are going to be brief as to the contractual issue involved here. My colleague, Mr. Schroeder, is going to be addressing some of the issues that were raised by Mr. Aberroni. But I'll be happy to answer any questions that you have. I would like to point out to the court a couple factors here. Number one, the record shows. If you speak, raise the microphone. I'm sorry. Try to get a little closer to the microphone. I've never been accused of not being loud enough. Is that better? Or I could raise my voice? It's better. Thank you. First off, just to point out a fact that Counsel raised. Mr. Duffy testified, or Mr. Kucinich rather, testified that he did provide a sworn statement. And, of course, then he contradicted that. I'm here to outline the breach of contract issue briefly. And that is Mr. Aberroni states it as a foregone conclusion that except for this technicality, he would have won this case. And I believe that the court has to look at the manifest weight of the evidence into the record and show that there wasn't performance or substantial compliance by Mr. Kucinich under any. But what is our standard of review here? We're reviewing to see if the court was improper in directing on this particular issue. So what is it? What is our standard of review? I think the court on the mechanics, on the lien issue, it could be de novo, yes. I agree with that, Your Honor. Okay. All right. And so I'll switch over to that for a moment, too, because we still do have the Ambrose case, which is still good laws as far as I can understand it. And we're really getting to a point of somewhat form over substance. And that is the Ambrose case and Melissa dealt with situations where we're looking somewhat for pleading type rulings versus this is a case that went to trial. This is a case where the court heard everything. This is a situation where everything was brought to the court. This is not summary judgment. Well, it was a pleading type ruling in the sense that you raise an affirmative matter for the first time, a statutory defense that should have been pled. Do you agree with that? I don't believe the court made that ruling. I think that's the point that's being made right now by the plaintiff. I don't think Judge Whedon made any ruling as to the proprietoriness of the affirmative defense being pled. Well, what about the code of civil procedure that says a statutory violation in order for it to be considered by the court should be pled? Yes. I don't have a direct answer to that, Your Honor, other than he didn't comply with the statute. I mean, I guess, again, it comes to both. The bank and your client didn't comply with the statute by pleading the statutory defense. Perhaps. Perhaps. But then we could, you know, the remedy there would be to amend to conform to the proofs. Well, plaintiff asked for time, asked you to put it in writing, and the court denied that request. Right. They didn't ask us. They asked the court to do that. The court felt that the failure to do that was in and of itself improper. That's correct. And the motion to conform to the proofs has to be done at the trial court, not the appellate court. Correct. And I'm not doing that now, Judge. Yes, sir. Right. So, I guess, in summary, from my side of it, Your Honor, is the, and maybe the court's not looking at this right now. I'm coming at it from the contractual level. And they have made a foregone conclusion that everything, but for this, that they would have prevailed. And it seems to me that, at a minimum, this would have been remanded to the court to then examine all of these other factors that were out there, which perhaps were not addressed in the ruling. But I believe that when the court looks at the ruling itself, it has the ability to affirm, for any reason, the court confined on the manifest weight of the evidence standard. But the court made a ruling as to why they did what they did, and it had nothing to do with a breach of contract. It had everything to do with the Mechanics' Lien Act. Yes. So, really, we really don't have anything here before us with respect to a breach of contract and the evidence, whether it was sufficient or not sufficient, do we? I disagree, because the court made a ruling on the attorney's fees that were based on the contract. We were for the prevailing party. And so the court, I think, brings the contract, the trial court brings the contract before this court. Well, I thought the court ruled that there was a written contract. Right. And because of the written contract, it forfeited the quantum merit or equitable claim. A contract claim can't have an equitable claim. So my reasoning was that the court did recognize that a written contract did exist. And that we prevailed. I mean, that's how we were awarded fees. Then that opened up an avenue of consequences, which means that there had to have been a breach and we hadn't prevailed on it. That's how I would extrapolate it, Judge. I don't know how else there could be a pathway into our being awarded fees, which the court awarded. I don't think the court could have said we awarded fees. Could have been more clear. Pardon? The court could have been more clear. Perhaps. Or right. But I think that when you look at the – that's where I'm – and maybe guiding the court in a direction it doesn't want to go, which is the contract is still – there's still things in the contract that support the ruling. But I also see the court's point that – the appellate court's point that they're looking more at the procedural aspect of the case. What's your theory on how we support the directed verdict by the court on the issues? You know, that's something Mr. Schroeder has briefed a little bit better than I have. So if you don't mind, I'm going to not answer the question, but I'm going to defer to him. Thank you. That's all I have. If there's any more questions. Do you have anything, Judge? No. Your Honor? No. Thank you, Your Honor. Good morning. Good morning, Mr. Chief. My name is Lewis Schroeder on behalf of the National City. Now – You're on the hot seat. We have a little shorter man, so you have to pull that down and torch it. It happens to me all the time. Mr. Schroeder, before you go on, would you tell us what you believe the intent of the legislature is behind the mechanics lien app? Is it the same as your opponent's or different? To a great degree, I would say it's the same. It is to protect, excuse me, a good faith mechanics lien claimant. I submit we don't have that here. Is it to protect the contractor or to protect the consumer? There is all kinds of case law that says it's primarily to protect the contract lien claimant. I would agree with that. But it also is to protect a good faith contract lien claimant. There are three days of testimony here, and I raised this in my affirmative defense also, that Mr. Kucinich committed fraud on the bank by being, first of all, a mortgage broker who facilitated Mr. Duffy obtaining the loan. And then he comes back later and says, well, when I did that, I also had this secret contract that gives me a right to be prior to this mortgage that I facilitated the making of and took a commission to have. That one of our affirmative defenses was fraud. And I believe on that basis alone, he did not act in good faith, and this directed judgment ought to be affirmed. And this court can take any basis that's in the record to affirm a lower court's judgment. Let me ask this. Is it true that you raised the sworn statement for the first time at the motion? And is that true? It's not true that it was raised for the first time in the motion, Your Honor. Mr. Kucinich contended all along that he gave sworn statements. The court didn't believe him. But this is the question. You're asking us to affirm on another ground than what the court ruled on, which is the failure to provide the sworn statement. Doesn't the Code of Civil Procedure and Supreme Court Rule 133 require you to specifically plead that as an affirmative defense? And otherwise, that defense is waived? If it is an affirmative defense, yes. Here it was, I don't know that it rises to the level of an affirmative defense, Your Honor. He contended he gave sworn statements at trial. The court didn't believe him. I raised it in my opening statement to the effect that I've never seen one that was up to date. And he never addressed that point other than to say he gave them, he just didn't have copies. So it was a contested issue throughout the trial. And to that extent, I don't believe there is any, I'm not quite sure how to articulate it, but I don't believe it rises to the level of an affirmative defense when it is a contested factual issue. But did Duffy, he never really testified that he was looking for a sworn statement. He never testified to that. The trial court found. The trial court felt that he was, but they said, well, since he was asking for this, I would say that that was akin to a sworn statement. But he wasn't looking for a sworn statement for the documentation that perfected or satisfied a need, was he? He never specifically asked for a sworn statement, I agree, Your Honor. Where was the prejudice to Mr. Kucinich with him not getting a sworn statement? The prejudice to Mr. Kucinich or to Mr. Duffy? To Mr. Duffy. He felt he was being overcharged and that Mr. Kucinich was lying to him. And the testimony also was contested in that regard. Duffy, Kucinich says Duffy refused to pay him. Duffy says Kucinich walked off. But is that the basis for the Mechanic Lean Act to see if someone's overcharging you or if someone is lying? It's certainly one of the bases, yes, Your Honor. Well, if you have, as in this case, there are no leans. There were no leans at the time. A subcontractor's statement was requested to be filed if that's the way the court interprets it. Where is the prejudice? I'm not sure in that regard there need be prejudice, Your Honor, because there were no subcontractors in the Ambrose case or the Molessa case either. And I'm not sure there were any in the Northwest case. Did you read the Converter case? Yes, I did. Isn't that more in line with what we're talking about here? In that case, the subcontractor's leans of time to file a lien had long expired, as it has in this case. Okay. I guess I'm just looking at where is the prejudice. You don't feel that there needs to be prejudice, but I guess I keep going back to the Supreme Court's recent ruling in the Home Repair Act and where the courts are going with respect to this type of technicality, if you will. It's an entirely different statute that was addressed by the legislature before the Supreme Court, which was ruling that strict compliance wasn't necessary. The Mechanics Lien Act has been, in effect, much, much longer in that strict compliance has always been there, and no court has said we can ignore that compliance. So I think that's the distinction, Your Honor. Doesn't it have to do somewhat of a balancing, though, for equity purposes? There is the wider Combs case addressed that balancing, and look at the equities. I say please look at the equities here. There's no house. There's no benefit to the homeowner. And certainly from my point of view. Isn't that the homeowner didn't participate in that? He agreed that the house should be destroyed. At a point in time, there was value from the contractor. The house was, let's just say, two-thirds built. At a point in time, there was value, yes, Judge, but he, as I understand, I'm sorry. If the owner decides to destroy the home, the value was still on the land at a point in time. And I don't think the owner can destroy a potential lien by agreeing to burn down the house. So it eliminates the aspect of value in assessing how much a contractor would be entitled to it regarding improvement of the land. I believe the record will show, Your Honor, that there were so many co-violations on this house because of its partial construction. There were neighborhood groups petitioning the village. There were co-violations, and it's my understanding Mr. Duffy had no more funds to do anything on this project and had to concede that it be demolished. It wasn't. I think that's different than agreeing to removing a value. And there was also testimony at trial that he Well, how does destroying the home by agreement between the builder and the owner affect the mechanic lien? I'm not sure that it does. It affects the unjust enrichment claim that had been brought because there's no benefit to the homeowner. Now, the court found that there was a contract. And if there was a contract, then we're not involved in equitable process of action. Certainly. If there's a contract, there's no quantum error. Your time is up. So if you want to finish up with a point, you may. My time is up. I can be done unless you have further questions. All right. Thank you. Thank you. Judge Butler? Yes. I just want to address a couple of points because I think a couple of them are factually incorrect. Mr. Kucinich said he gave us one statement in December of 2004. That has no bearing whether he gave it or not in March because the cases are pretty much you can ask every time you pay for a sworn statement, each time you pay. So whether he gave one in December, and that's when he testified he gave one, would have no bearing on this issue. Second of all, as to the fraud, the court said I reject that. They did not appeal that finding. I mean, we're not here on that. They can't raise it now. So the purpose, when you look at the Act, the purpose of the Act in no case is to say we're going to protect a builder or an owner from being overcharged. The purpose of the Act is to hold funds, if you're on notice, to pay subcontractors that might not otherwise get paid. It has nothing to do with being overcharged or whether you've made a bad deal. The reason that, in my time, it had nothing to do with the house being torn down. The reason the house was torn down and there were complaints is that Mr. Duffy abandoned it. It stood abandoned for over a year. Children were going in. That was the reason. It had nothing to do with it. What's your response to their argument that even if you don't have the mechanics lien portion of the case, that the breach of contract portion was decided by the court in their favor? Well, no, the breach of contract wasn't decided in their favor. The breach of contract was decided in our favor. The only way Duffy could get fees is if the court found there was a valid contract. The court said there is a valid contract, but because of Ambrose and Melissa, he doesn't get to collect under it. The court found it. You can't be saying there's a, I get fees under an invalid contract. By submitting a fee petition, they admit that the contract is valid. That's the only way they could get fees. The court's finding was you have a valid contract. You can't get unjust enrichment. You could plead it as an alternative, but once a court says you have a valid contract, the unjust enrichment goes out the window. And because you have a valid contract, you get attorney's fees. Unfortunately, Melissa says that even if you have a valid contract, he doesn't get anything. He doesn't get a lien, and he can't recover on the contract. The court was quite clear in its findings. It rejected the fraud. It found there was a valid contract, awarded fees under that contract, and then said you lose everything because you didn't file under this late offense. Ambrose is easy to talk about. You know what? I was a state attorney for a long time, too. Sometimes, you know, bad facts make bad law, and courts want to rule for something. If you look at Ambrose, Ambrose was a statement. There was a definite statement being asked for, and the only thing not paid in Ambrose was the last payment. What they didn't say like here, the fellow couldn't get for the materials and things he paid for. What was being held back was part of the profits in the last payment, because that's what goes to profits. That's the only thing. They didn't say, hey, guess what? You get to recover everything you paid this guy for what he did. So I don't think any of those are, you know, any part of that. So thank you. I'm trying to find your prayerful relief in your book. Well, our prayerful relief when you're having trouble finding our relief. If you find that there was a valid contract and the court was right, it's a simple, you know, reverse and enter judgment. If you find that the court, if there's an issue, I mean, we think the only issue open is the attorney's fees interest. What about Section 219? As to? Wasn't there a Section 219 violation in discovery? Well, we got that. They awarded sanctions. That's not an appeal. So that's where Mr. Duffy alleged he had a forgery, which was not a forgery. So the only issue is attorney fees for the contract. And the interest. And successful. Yeah. Right. There would be vacated. We'd be able to put in a petition for fees and the interest due on the contract. And then we'd execute the lien. Thank you very much. Court stands in recess and the case is taken under advisement.